[Nos. 23273-1-II; 23714-8-II.    Division Two.    March 24, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL POPE, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MONTE ROBIN KAIJA, JR., *Appellant*.

*Robert Mason Quillian* and *Thomas Edward Doyle*, for appellant Pope (appointed counsel for appeal).

*Thomas Edward Doyle* and *Patricia Anne Pethick*, for appellant Kaija (appointed counsel for appeal).

*Jeremy Randolph, Prosecuting Attorney*, and *J. Andrew Toynbee, Deputy*, for respondent.

HOUGHTON, J. — Michael Pope and Monte Robin Kaija, Jr., the defendants in these linked cases, appeal convictions of bail jumping for failure to appear at probation violation hearings. Pope and Kaija both claim that the bail jumping statute does not apply in this context. Kaija also argues that the jury instructions in his case were deficient. Because we hold that the bail jumping statute applies, we affirm Pope's conviction. Because we hold that Kaija's "to

convict" instruction lacked an essential element, we reverse Kaija's conviction.

## FACTS
### Michael Pope

Michael Pope was convicted of a class B felony in 1991. On February 20, 1997, a court order released him, pending a probation violation hearing. Pope signed a $5,000 appearance bond with the required appearance on February 27, 1997. On the 27th, Pope signed a notice of setting requiring him to appear on March 31, 1997, for the hearing. He failed to so appear.

Pope was charged with bail jumping with the class B felony as the underlying offense. After a bench trial, the court found him guilty and sentenced him to 48 months incarceration.[1] Pope appeals, arguing he cannot be convicted of felony bail jumping for failure to appear at a probation violation hearing.

### Monte Kaija

Monte Kaija was charged with probation violations arising from a class B felony conviction.[2] He too failed to appear for his scheduled probation violation hearing. Kaija was convicted by a jury of bail jumping and sentenced to 22 months incarceration. Kaija appeals. In addition to claiming the inapplicability of the bail jumping statute, Kaija claims the court improperly instructed the jury and improperly commented on the evidence.

## ANALYSIS
### Applicability of the Bail Jumping Statute to Probation Violation Hearings

■ Both Pope and Kaija contend that failure to appear

---

[1]This sentence was based upon an offender score of 8.5 and a class B felony as the underlying charge. RCW 9A.76.170(2)(c).

[2]In the amended information, Kaija was also charged with bail jumping pursuant to a class C felony, however, the judgment reflects only one count of bail jumping.

at a probation violation hearing does not support a conviction for felony bail jumping under RCW 9A.76.170(1), (2)(c).

■ General principles of statutory construction apply to determine the meaning and scope of the bail jumping statute. *See State v. Chester,* 133 Wn.2d 15, 21, 940 P.2d 1374 (1997). Our duty is to ascertain and carry out the intent of the Legislature. *Chester,* 133 Wn.2d at 21. If a statute is unambiguous, its meaning is derived from the language of the statute alone. We may not add language to a clear statute even if we believe the Legislature intended something else but failed to express it adequately. *Chester,* 133 Wn.2d at 21 (citations omitted).

The bail jumping statute provides:

> (1) Any person having been released by court order or admitted to bail with the requirement of a subsequent personal appearance before any court of this state, and who knowingly fails to appear as required is guilty of bail jumping.
>
> (2) Bail jumping is:
>
> (a) A class A felony if the person was held for, charged with, or convicted of murder in the first degree;
>
> (b) A class B felony if the person was held for, charged with, or convicted of a class A felony other than murder in the first degree;
>
> (c) A class C felony if the person was held for, charged with, or convicted of a class B or class C felony;
>
> (d) A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.

RCW 9A.76.170.

■ Thus, the elements of bailing jumping are met if the defendant: (1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and, (3) knowingly failed to appear as required. In addition to these elements, the statute implies a nexus between the crime for which the defendant was held, charged, or convicted and the later personal appearance.

Kaija and Pope assert that this nexus was absent in their cases, although the statutory elements were met. They claim that because they had already been sentenced for the underlying crime, the charge of felony bail jumping does not apply. Kaija and Pope ask us to read the statutory phrase "convicted of" to mean "only convicted of, and not yet sentenced."

The statute is not susceptible to this reading. The fact of conviction remains whether a defendant has been convicted and not sentenced or, as in the present cases, has been convicted and sentenced. The statute plainly applies to both.

Neither the phrase "convicted of" nor the statute as a whole is ambiguous. Therefore, we derive the statute's meaning from its language alone. We must give the plain statutory language full effect even if it results in what seems to be a harsh penalty for failing to appear for a probation violation.[3] *See Graham Thrift Group, Inc. v. Pierce County*, 75 Wn. App. 263, 267-68, 877 P.2d 228 (1994). The bail jumping statute, by its very terms, applies to postconviction hearings. Thus, when a defendant is charged with bail jumping for failing to appear at a probation violation hearing, the underlying crime is the crime for which the defendant is on probation, and its character determines the degree of bail jumping.

In summary, Pope and Kaija's argument based upon statutory interpretation fails.

## Instructional Issue

■ Kaija also contends that the "to convict" jury instruction in his case lacked an element. Failure to instruct on an element is automatic reversible error, *State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997), because such failure relieves the State of its burden to prove each element of the crime beyond a reasonable doubt. *State v.*

---

[3]The seeming harshness in these cases is largely due to the defendants' offender scores. The standard range for bail jumping with a class B felony conviction as the underlying crime is three to eight months. RCW 9.94A.310(1).

*Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995). Because Kaija failed to raise this issue below, we first determine whether the claimed error achieves constitutional magnitude—is manifest. *State v. Eastmond*, 129 Wn.2d 497, 502, 919 P.2d 577 (1996) (citing *State v. Scott*, 110 Wn.2d 682, 684-85, 757 P.2d 492 (1988); RAP 2.5(a)(3); CrR 6.15(c)).[4] If the court concludes that review is appropriate, it then will decide if the error provides grounds for reversal. *Id.*

The trial court gave the following instruction:

> To convict the defendant of the crime of Bail Jumping as charged, each of the following elements of the crime must be proved beyond a reasonable doubt.
>
> (1) That on or about the 30th day of October, 1997, the defendant knowingly failed to appear before a court;
>
> (2) That the defendant had been released by court order or admitted to bail with the requirement of a subsequent personal appearance before that court *regarding a felony matter*; and
>
> (3) That the acts occurred in the County of Lewis, State of Washington.

Clerk's Papers at 16 (emphasis added). As noted above, one of the elements of bail jumping is that the defendant was held for, charged with, or convicted of a particular crime. *See* WPIC 120.41. Here, the instruction reduces this element to the phrase *regarding a felony matter.* The instruction fails to inform the jury of the elements necessary to convict under RCW 9A.76.170(2)(c): that Kaija was held for, charged with, or convicted of a class B felony. *See State v. Ibsen*, 98 Wn. App. 214, 989 P.2d 1184 (1999) (discussing elements of bail jumping). A "to convict" instruction must include all of the elements of the crime because it is a statement of the law upon which "the jury measures the evidence to determine guilt or innocence." *Smith*, 131 Wn.2d

---

[4]To ensure his jury instruction claim is before the court despite the absence of an objection to the instruction at trial, Kaija presents an ineffective assistance of counsel claim. Because the instructional issue is reviewable without having been preserved below, the ineffective assistance claim is not addressed.

at 263. By omitting an element of the crime of bail jumping, the trial court committed an error of constitutional magnitude. *See Eastmond*, 129 Wn.2d at 502; *see also State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985).

Next, the court decides whether the trial court committed reversible error to permit relief. *Eastmond*, 129 Wn.2d at 503. "By relieving the State of its burden of proving every essential element beyond a reasonable doubt, the omission of an element of the crime produces [reversible] error." *Eastmond*, 129 Wn.2d at 503 (citing *Byrd*, 125 Wn.2d at 714; *State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984)). Here, the jury could have misunderstood the elements necessary to convict Kaija of the crime of bail jumping because they received an incorrect statement of the elements, which relieved the State of its burden to prove each element beyond a reasonable doubt. Thus, the trial court committed reversible error by failing to inform the jury of all the elements necessary to convict Kaija of the crime of bail jumping.

The State concedes error but argues that it was harmless. A harmless error analysis of an instruction may be appropriate in some contexts. *See, e.g., State v. Jackson*, 137 Wn.2d 712, 726, 976 P.2d 1229 (1999). The "to convict" instruction, however, enjoys a special status. A "to convict" instruction must be complete in itself. *Smith*, 131 Wn.2d at 262-63 (citations omitted). A harmless error analysis is never applicable to the omission of an essential element of the crime in the "to convict" instruction. Reversal is required. *See Smith*, 131 Wn.2d at 264-65; *State v. Brown*, 94 Wn. App. 327, 339 n.3, 972 P.2d 112, *review granted*, 138 Wn.2d 1008 (1999); *City of Seattle v. Norby*, 88 Wn. App. 545, 556-58, 945 P.2d 269 (1997), *overruled on other*

*grounds by State v. Robbins*, 138 Wn.2d 486, 980 P.2d 275 (1999).[5]

Kaija also contends that the trial court commented on the evidence based upon the instruction given. We need not address that argument in light of our analysis of the instruction.

Pope's conviction is affirmed.

Kaija's conviction is reversed.

SEINFELD, J., and TOLLEFSON, J. PRO TEM., concur.

Review denied at 141 Wn.2d 1018, 1019 (2000).

---

[5]*State v. Smith* does not expressly preclude a harmless error affirmance despite an elemental error in the "to convict" instruction. But *State v. Brown* and *City of Seattle v. Norby* do.